AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Texas

| | |
|---|---|
| United States of America<br>v.<br>Joshua Alexander MAGALLANES<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 13, 2024__ in the county of __Zapata__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Knowing and in reckless disregard of the fact that an alien had come to, entered, and remained in the United States in violation of law, did transport and move and attempted to transport and move and conspired to transport and move such alien within the United States by means of transportation and otherwise in furtherance of such violation of law. |

This criminal complaint is based on these facts:

Continued on Affidavit

☑ Continued on the attached sheet.

/S/Michael Grant
*Complainant's signature*

Michael Grant, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence,

Date: June 17, 2024

*Judge's signature*

City and state: Laredo, Texas

Diana Song Quiroga, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT
In support of Criminal Complaint

UNITED STATES OF AMERICA

V.

Joshua Alexander MAGALLANES

CRIMINAL COMPLAINT

Case Number:

On June 13, 2024, a Border Patrol Agent (BPA-1) from the Zapata Border Patrol Station was working his assigned duties along United States (U.S.) Highway 83 (HWY 83). At approximately 7:30 p.m., the BPA observed a silver Chrysler 200 driving north on U.S. HWY 83. Although often traveled by local residents and others traversing through Zapata, Texas, U.S. HWY 83 is unquestionably a highway of choice for the movement of undocumented migrants since it is the primary means of "going north" after smugglers pick them up in the Rio Grande Valley. The BPA noticed the rear passenger sitting low and rigidly in their seats as if he was attempting to conceal themselves.

The BPA began to follow the vehicle to get a better look at it. As the BPA was catching up to the vehicle, he observed the vehicle hit its brakes and slow down well below the posted speed limit as if the driver was nervous with the BPA following. As the BPA was following the vehicle into San Ygnacio, Texas, the vehicle abruptly applied its brakes, and came to a stop and turned on its hazard lights. This action made the BPA further suspect this was a smuggling attempt and the driver was trying to avoid the BPA from conducting a traffic stop by pretending to have vehicle issues. The vehicle stopped at a curve on HWY 83 where the shoulder lane was ending. This made a very unsafe location for the vehicle and passing traffic.

The BPA and an additional BPA (BPA-2) came to a stop behind the vehicle and turned on their emergency lights to warn passing traffic of the vehicle hazard on the road and avoid an accident. The BPAs approached the vehicle to conduct a welfare check and asked the driver, Joshua Alexander Magallanes, if they needed any assistance. Magallanes stated that he observed a check engine light on his vehicle and wanted to evaluate it. The BPA then asked where he was from and where was he taking the passengers. Magallanes answered that he is from Rio Grande City, Texas, he picked up the passengers in Roma, Texas, and was taking them to Laredo, Texas. Magallanes appeared nervous while BPA-2 was talking to the passengers. Magallanes then stated that he would drive to a nearby gas station to evaluate the check engine light. BPA-2 asked the passengers where they were from, and they stated they were from Guatemala and El Salvador. All subjects were transported to the Zapata Border Patrol Station for further investigation and processing.

Joshua Alexander MAGALLANES was read his Miranda Rights and advised he was not willing to make a statement without a lawyer present.

Isaias Rolando RAMIREZ-Chilel, a citizen of Guatemala, will serve as a material witness in the case.
RAMIREZ-Chilel stated he crossed the Rio Grande River on June 11, 2024, and was then transported to a house. He stayed in that house for approximately one day until a male subject, Magallanes, picked him and along another person. RAMIREZ-Chilel stated he paid $500 United States dollars (USD) to be transported to Missouri. RAMIREZ-Chilel stated as they were getting pulled over by law enforcement, Magallanes instructed them to remain calm. RAMIREZ-Chilel was provided with a six-person photo lineup and was able to identify Joshua Alexander Magallanes as the driver.

Steven Alexis VILLALOBOS-Santos, a citizen from El Salvador, will serve as a material witness in the case. VILLALOBOS-Santos stated he crossed the Rio Grande River on June 11, 2024, and was transported to a house in Roma, Texas where he stayed for approximately one day. A male, Magallanes, arrived to at the house and picked him up. VILLALOBOS-Santos stated the driver opened the back passenger door and instructed him to get inside. VILLALOBOS-Santos further stated that as they were getting pulled over by law enforcement Magallanes instructed him to remain calm. VILLALOBOS-Santos was presented with a six-person photo lineup and was able to identify Joshua Alexander Magallanes as the driver.

SUBSCRIBED and SWORN to before me on

    17th    day of    June, 2024

_____  
Signature of Judicial Officer

/S/ Grant, Michael   Border Patrol Agent  
Signature of Complainant